UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-162-GWU

REGINA SEXTON,                                              PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

08-162  Regina Sexton

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-162  Regina Sexton

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-162  Regina Sexton

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  <u>Id.</u>  <u>Accord,</u> <u>Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work.

4

08-162  Regina Sexton

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

5

08-162  Regina Sexton

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

6

08-162  Regina Sexton

## DISCUSSION

The plaintiff, Regina Sexton, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of lower back pain of undetermined etiology, coronary artery disease, bilateral carpal tunnel syndrome, non-insulin dependent diabetes mellitus, chronic obstructive pulmonary disease secondary to nicotine abuse, obesity, and status post cerebral vascular accident with residual mild left-sided hemiparesis.  (Tr. 20).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Sexton retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 22-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 48 to 50, eighth grade education, and lack of past relevant work experience could perform any jobs if she were capable of "light" level exertion with the option of sitting and standing and no prolonged standing or walking in excess of 30 to 35 minutes without interruption, and also had the additional following non-exertional restrictions.  (Tr. 496).  She: (1) could perform no overhead reaching or climbing of ladders, ropes, or scaffolds; (2) could occasionally balance and climb ramps and stairs; (3) could not perform rapid or repetitive flexion or extension of the wrists; (4) could perform no aerobic activities such as running or jumping; and (5) could have no concentrated exposure to temperature extremes, excessive humidity,

7

poor ventilation, dust, odors, fumes, or gases or to industrial hazards. (Id.). The VE responded that such a person could perform the job of bench assembler, with 7,200 jobs in the state and 386,000 jobs in the national economy. (Tr. 497).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Although Mrs. Sexton submitted medical records reflecting treatment for a number of serious physical problems, including treatment for chronic lower back and leg pain (e.g., Tr. 137-49), a cardiac catheterization in April, 2005 following a myocardial infarction (Tr. 155-67), bilateral carpal tunnel syndrome (Tr. 282-3), and a hospitalization for several weeks following a stroke in March, 2006 (e.g., Tr. 294-6), no treating or examining doctor placed any permanent functional restrictions due to these conditions. The plaintiff herself testified that her family physicians had never discussed restrictions with her. (Tr. 491). The only medical sources to offer opinions were state agency physicians Dr. Timothy Gregg and Dr. David Swan, who completed assessments prior to the plaintiff's stroke limiting her to "light" exertion with occasional balancing and a need to avoid concentrated exposure to extreme cold and heat. (Tr. 204-11, 251-8).

The plaintiff's only argument on appeal concerns the issue of whether an additional medical opinion should have been obtained regarding her restrictions following the stroke and its aftermath. Specifically, she points to the office notes of Dr. Cesar Agtarap. Dr. Agtarap began treating the plaintiff for chronic pain even

8

08-162  Regina Sexton

before her alleged onset date, and, as the plaintiff notes, her gait was always listed as normal until after the stroke.  (E.g., Tr. 140-2).  On April 28, 2006, at the first office visit following the stroke, Dr. Agtarap noted that Mrs. Sexton had an antalgic gait and was using a walker.  (Tr. 271).  On regular followup visits through April 4, 2007, slightly more than one year after the stroke, he reported that she was using a cane.  (Tr. 260-9).  The plaintiff also notes that by June 27, 2007, Dr. Naveed Ahmed, a neurologist who was examining her primarily for symptoms of carpal tunnel syndrome, indicated that she had a normal stance, gait, and arm swing.  (Tr. 283).  The plaintiff asserts, however, that Dr. Agtarap's notes established that she was using a cane for more than one year after her stroke, and as such the ALJ essentially acted as his own medical expert by not including this limitation in the hypothetical question.

As noted in the Applicable Law section of the opinion, it is ultimately the plaintiff's responsibility to prove her own case.  The plaintiff, who was represented by an attorney, did not produce any medical opinions from her treating sources, nor do Dr. Agtarap's notes definitively establish that her use of the cane was medically necessary or required; he simply notes that Mrs. Sexton was using one.  The Commissioner's regulations recognize the potential vocational significance of an inability to ambulate effectively.  20 C.F.R. Part 404, Subpt. P, App. 1, §1.00B. Subsection J of the regulations states that the regulations require that "[t]he medical

08-162  Regina Sexton

basis for the use of any assistive device (e.g., instability, weakness) should be documented."  This critical factor is lacking in the present case.[1]

The ALJ appears to have given the plaintiff the benefit of a considerable amount of doubt in formulating a hypothetical question which includes restrictions reflecting many of her medical problems, such as carpal tunnel syndrome, which were not specified by the state agency reviewers.  While the court is sympathetic to the plaintiff, who clearly has had a series of difficult medical problems, the evidence is simply inadequate to establish greater functional restrictions than found by the ALJ.

The decision will be affirmed.

This the 30th day of June, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[1]Additionally, the plaintiff's argument is inverted.  Since no physician ever stated that the plaintiff would be required to use a cane for an extended period, the ALJ would have been acting as his own medical expert by finding that she was, in fact, required to do so.

10